## G. A. NICHOLS, Inc., v. COLLIER et al.

No. 23663.   Opinion Filed May 2, 1933.

Rehearing Denied May 1, 1933.

Jas. C. Cheek and Frank E. Lee, for petitioners.

Lillard, Gibbons & Wheeling, for respondent.

McNEILL, J.   Petitioners seek to review an order and award, adverse to them, made by the State Industrial Commission on April 23, 1932.   The only question involved is the vacation of said order on the ground of change of condition.   It appears that the respondent received a compensable injury on June 14, 1930, while engaged in his occupation as a bricklayer for G. A.

Nichols, Inc., as a result of a block, 2x4x1 foot, falling on his shoulder, causing the nerves and ligaments to be torn and dislocated in his left arm. Compensation was paid commencing June 19, 1930, and was continued until some time in July or August, 1931. Pursuant to a hearing the Commission, on September 26, 1931, entered its order and award finding that respondent was temporarily totally disabled from the date of the injury, June 14, 1930, to June 25, 1931, and was paid his temporary total disability, at which time the healing period terminated. The Commission also found, in addition to the respondent's total disability, that respondent had suffered permanent loss of use of left arm to the extent of 100 per cent. by reason of said accidental injury, and made its award for compensation at the rate of $18 per week, for a period of 250 weeks.

Thereafter, petitioners filed an original proceedings in this court to review this award of September 26, 1931, which was dismissed by this court on January 27, 1932, on application of said petitioners. On February 2, 1932, petitioners filed a motion before the Industrial Commission, asking that the cause be set down for hearing in order that petitioners be afforded opportunity of presenting newly discovered evidence, which was impossible to obtain at the time of the Commission's last hearing. This motion was denied by the Commission on February 13, 1932. On February 22, 1932, petitioners filed a motion with the Commission that the cause be set for hearing to determine whether or not the respondent had undergone a change of condition for the better, and also to allow petitioners to present new evidence which was not available until after the former award was made and which evidence could not be obtained by due diligence. Pursuant to this motion, the Commission set the cause for hearing. After several hearings, the Commission, on April 23, 1932, found that the evidence of petitioners was insufficient to establish a change of condition, and reinstated its former award.

The burden of proving that the disability resulting in the injury has ceased, or that there was a change in condition since the rendition of the former award, was upon the petitioners. Canadian Mining Co. v. Robbins, 155 Okla. 20, 7 P. (2d) 886.

Petitioners contend that respondent was able to use his left arm in the performance of his work as a brick mason. At the first hearing there was expert testimony to show that respondent was suffering from a flaccid paralysis of the left arm, rendering it useless. In support of their motion, apparently as a dernier resort, petitioners took a moving picture of respondent, unknown to him while he was working as a bricklayer on a job in Oklahoma City. These pictures were exhibited to the Commission. The former doctors, who testified on behalf of respondent at the first hearing, saw the moving pictures, and then gave it as their opinion that respondent did have the use of his left arm. These opinions of the doctors were based entirely upon a consideration of the views as revealed by the moving pictures.

Dr. J. L. Walker, who testified for respondent at the first hearing, testified after he had seen the motion picture exhibits, in part, as follows:

"Q. * * * A. Taking into consideration the motions shown in the picture, I would say he has not a flaccid paralysis. Q. * * * A. My reason for that statement is that he is using his left arm, that is, he is doing work with his left arm, he is moving it. Q. * * * A. In the picture, he flexed his arm to an angle of 45 degrees; he also abducted from his body to an angle of about 30 degrees. Q. * * * A. He picked up the tile with his right hand on top and the left hand underneath it. Q. * * * A. Taking into consideration that he both abducted and flexed his arm one time, I would have to say that it would be quite possible for him to do it numerous times. Q. * * * A. Based on the picture I saw, he flexed his arm rather well at least one time. Q. * * * A. Based on the picture I would state that his flexion was not impaired, but that he did not use it. Q. * * * A. In so far as apparently the arm was not used as much as the right arm, but that it was apparently used once in a normal manner, I would have to state he was just neglecting to use the arm, that he could use it. Q. * * * A. It is my opinion there is not a flaccid paralysis present in the left arm, forearm, because he just used—the moving picture shows he used it, which is not found in flaccid paralysis."

Dr. Wearner, who also had testified for respondent at the first hearing, gave similar testimony to that of Dr. Walker after a view of the moving pictures. It appears that portions of the film were cut off after it had been displayed the first time before the Commission, and the portions which were eliminated were thrown away by the operator.

Respondent had the moving picture exhibited to V. C. Swain, a bricklayer, who

had been engaged in the occupation for about 25 years. He testified after seeing the moving pictures that it was his opinion that the arm was practically useless. He testified, in part, as follows:

"Q. Did you observe those pictures? A. Closely. Q. From your experience as a bricklayer, state whether or not in your opinion that picture indicates a bricklayer operating in a normal manner? A. It does not. Q. Wherein does it depart from the ordinary proceeding? A. The fact the man was doing practically all the work with his right hand, the work that is customarily done with the left hand is done with the right hand. * * * Q. What, in detail, did you notice as being out of ordinary? A. The way the man laid his trowel down, picked it up with the right hand and placed it on the wall with the right hand. * * * Q. In view of Mr. Collier's statement, and in view of the picture, now state what was your opinion? A. My opinion was, his arm was practically useless. Q. What is your opinion now? A. It is unchanged. Q. In other words, his arm is practically useless? A. Yes."

Mr. Martin Kahoe, who had been a bricklayer since 1909, after the moving pictures were exhibited to him, testified as follows:

"Q. And it was your opinion, after reviewing the picture, Mr. Collier was unable to use his left arm, is that right? A. Yes, sir. Q. You didn't notice Mr. Collier's arm move from a lifeless position along his side? A. I seen him drag it up with the tile, he throwed his right hand over on top of it, especially one or two times."

The respondent was also called as a witness, and he demonstrated to the Commission the manner in which the tile was laid on the job in question. It appears that the job in question would take two bricklayers about five or six hours to complete, and that the job was completed by respondent and his son in about eight hours. The Commission also viewed the respondent after he had been stripped to the waist when he exhibited to the Commission the movement of his arm. He testified that the arm in a certain position continued to pain him, and this pain extended to his shoulder blade. It is our opinion that there is ample evidence to sustain the award of the Commission.

Award affirmed.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, ANDREWS, OSBORN, and WELCH, JJ., concur. BAYLESS and BUSBY, JJ., absent.